DISCIPLINARY COUNSEL v. HOFELICH.

[Cite as *Disciplinary Counsel v. Hofelich,*
115 Ohio St.3d 14, 2007-Ohio-4269.]

(No. 2007–0748—Submitted June 6, 2007—Decided August 29, 2007.)

---

**Per Curiam.**

{¶ 1} Respondent, James Albert Hofelich of Westlake, Ohio, Attorney Registration No. 0033009, was admitted to the Ohio bar in 1969. For the reasons that follow, we conclude that respondent's license to practice law in Ohio should be suspended for six months.

{¶ 2} On June 12, 2006, relator, Disciplinary Counsel, filed a complaint charging respondent with professional misconduct. Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in December 2006. The panel then prepared written findings of fact, conclusions of law, and a recommended sanction, all of which the board adopted.

## Misconduct

{¶ 3} Relator received a grievance against respondent from Theodore Caputa in February 2005. Relator sent a letter of inquiry about the grievance to respondent at his business address in March 2005, and respondent promptly replied that same month.

{¶ 4} Relator received another grievance against respondent in May 2005. That second grievance—from Michael Jelepis—alleged that respondent had failed to return materials to Jelepis despite repeated requests. Relator sent a letter of inquiry about the second grievance by certified mail to respondent at his business address in May 2005. The certified letter was accepted at that address by R.L. Booker, but respondent never replied to the letter. R.L. Booker signed for a second letter of inquiry from relator about the Jelepis grievance in June 2005, but again, respondent failed to reply to the letter. Relator then sent a third certified letter to respondent in June 2005 about the Jelepis grievance, and though the return receipt for that letter was likewise signed by someone at respondent's address, respondent did not reply to the letter.

{¶ 5} In December 2005, relator sent a fourth certified letter to respondent about the grievance. That fourth letter was mailed to a new home address that respondent had provided to this court's attorney-registration office. The letter was returned "unclaimed." In December 2005, relator sent a fifth certified letter to respondent about the grievance. That letter—which was sent to respondent's business address—was accepted by R.L. Booker, but again respondent failed to reply.

{¶ 6} On December 23, 2005, relator sent a subpoena to respondent by certified mail at his business address. The subpoena directed respondent to appear at relator's office for a deposition at 10:00 a.m. on January 12, 2006, and instructed him to bring his complete files for the Caputa and Jelepis matters. Respondent did not appear for the deposition.

{¶ 7} At 10:30 a.m. on the day of the scheduled deposition, relator called respondent's office and left a voicemail message indicating that the deposition would begin in 30 minutes. At 11:00 a.m., relator again called respondent's office and left a voicemail message indicating that the deposition would proceed at that time.

{¶ 8} Although respondent never replied to any of the letters of inquiry about the Jelepis matter, Jelepis advised relator that a large package containing some of his file materials was delivered to his home on January 23, 2006. On January 27, 2006, relator received a voicemail message from respondent stating, "Hi my name is Jim Hofelich. I really didn't know anything about the deposition, but I wondered if there was anything I could do to repair this situation. If you could, give me a call at 440–617–2800. Thank you. Bye." Relator returned the call and left a voicemail for respondent on January 31, 2006. Respondent did not return relator's call or attempt to call relator again.

{¶ 9} On February 23, 2006, relator sent a letter to respondent at his business address, advising him that its investigation was concluded and that a formal complaint would be filed. Respondent made no attempt to contact relator.

{¶ 10} On May 1, 2006, relator again sent a letter to respondent at his business address, advising him that relator intended to file a formal complaint with the Board of Commissioners on Grievances and Discipline. Respondent never replied. On May 19, 2006, relator sent a letter and a copy of the complaint to respondent at his business address. Respondent did not reply to the letter.

{¶ 11} We agree with the parties' stipulation and the board's finding that respondent's actions violated Gov.Bar R. V(4)(G) (requiring attorneys to cooperate with and assist in any disciplinary investigation).

### Sanction

{¶ 12} Relator recommended that we impose a stayed six-month suspension for this misconduct, while respondent requested a public reprimand. The panel and the board accepted relator's recommendation. Respondent has filed no objections to the board's findings or its recommendation.

{¶ 13} In imposing a sanction for attorney misconduct, we consider the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The board

identified one mitigating factor: the absence of any prior disciplinary record. BCGD Proc.Reg. 10(B)(2)(a).

{¶ 14} After weighing that mitigating factor and respondent's misconduct, we conclude that a more severe sanction than the one recommended by the board is appropriate. As we recently explained:

{¶ 15} "Attorneys must timely respond to a disciplinary inquiry, whether the inquiry relates to the lawyer's own conduct or that of a colleague. Compliance with this obligation is critical to the effectiveness of the legal profession's effort to monitor itself. Although every communication from a disciplinary agency should be taken seriously, the initial inquiry about a client grievance should receive the respondent lawyer's immediate and professional attention." *Cleveland Bar Assn. v. James,* 109 Ohio St.3d 310, 2006-Ohio-2424, 847 N.E.2d 438, ¶ 8.

{¶ 16} In the *James* case, we imposed a one-year suspension on an attorney who had failed to respond to letters and phone calls from a local bar association about a client's grievance, and we noted that the attorney's "utter lack of cooperation" was "disrespectful to the legal profession and to respondent's colleagues in his community." *James,* 109 Ohio St.3d 310, 2006-Ohio-2424, 847 N.E.2d 438, ¶ 9. The same is true in this case, though the respondent—unlike the respondent in *James*—did answer the complaint once it was filed and did participate in the disciplinary hearing. For that reason, a six-month suspension rather than the one-year suspension that we imposed in *James* is warranted. Yet because respondent ignored relator's repeated inquiries for more than a year, we are unwilling to stay the suspension. Respondent's actions led relator's staff and the panel members to devote many hours to an investigation that could and should have been resolved much more quickly and at much less cost. His pugnacious refusal to respond to relator's inquiries about a client's grievance "calls into doubt respondent's fitness to serve other clients or potential clients." *James,* 109 Ohio St.3d 310, 2006-Ohio-2424, 847 N.E.2d 438, ¶ 9.

{¶ 17} Accordingly, respondent is hereby suspended from the practice of law in Ohio for six months. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., LUNDBERG STRATTON, O'CONNOR, LANZINGER and CUPP, JJ., concur.

PFEIFER and O'DONNELL, JJ., would suspend respondent from the practice of law in Ohio for six months but stay the suspension.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Carol A. Costa, Assistant Disciplinary Counsel, for relator.

Bricker & Eckler L.L.P., and Alvin E. Mathews Jr., for respondent.